UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION
CASE NUMBER:

ANITA ALLBRIGHT,

    Plaintiff,

v.

MERCK SHARP & DOHME, CORP.,

    Defendant.
_____/

## COMPLAINT AND ACTION FOR DAMAGES

COMES NOW the Plaintiff Anita Allbright by and through the undersigned counsel and files this as her Complaint and Action for Damages. As grounds it is alleged:

### Jurisdiction

1. This is an action for damages wherein the damages exceed Seventy Five-Thousand Dollars ($75,000.00) exclusive of interests and costs and there is complete diversity of citizenship jurisdiction.

2. Anita Allbright is and was a citizen of the State of Florida residing in Broward County, Florida within the Southern District of the United States District Court of Florida.

3. The Defendant MERCK, SHARP & DOHME, CORP. (hereafter "Merck"), is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at One Merck Drive, Whitehouse Station, NJ 08889 and with its mailing address at Merck Corporate Headquarters, 2000 Galloping Hill Road, Kenilworth, NJ 07033.

4. Pursuant to diversity jurisdiction and the issues involved herein, this Court

has jurisdiction pursuant to 28 U.S.C. Sec. 1332; 1391 © and 28 U.S.C. Sec. 1391 (A) (1).

## Venue

5.     Merck is licensed to do business and does business in the State of Florida at all times relevant hereto.  Merck has sufficient minimum contacts within the State of Florida, which is the most convenient forum, and it would not offend traditional notions of fair play and substantial justice for this Court to take jurisdiction over the parties hereto and subject matter herein.  This is most convenient forum as Anita Allbright and her treating physician(s) reside in the Southern District of Florida.  These issues of Merck's liability for identical fact patterns have been adjudicated.  Fosamax was unreasonably dangerous due to defective design.  Florida product liability law applies.  *In Re Fosamax* 742 F.Supp. 2d 460 (N.Y. S.N.Y. 2010) (see *Shirley Boles v. Merck,* 06 CIV 9455 JFK)

6.     Merck shall be served through its Resident Agent CT Corporation.  It is deemed to reside in any judicial jurisdiction in which it is subject to personal jurisdiction.

## Duty

7.     At all relevant times, Merck developed, manufactured, advertised, promoted, marketed, sold, and/or distributed the pharmaceutical drug Fosamax, and/or alendronate throughout the United States.

## Summary of the Case

8.     Anita Allbright purchased and/or otherwise obtained Fosamax and/or alendronate from Merck through its distributors, retailers, or other sellers.

9.     Anita Allbright developed osteonecrosis of the jaw and/or other jaw and bone injuries after ingesting Fosamax and/or alendronate.

10.    As a result of the defective nature of Fosamax and/or alendronate as set out

in this Complaint, persons, such as Anita Allbright, who were prescribed and ingested these drugs have suffered severe and permanent personal injuries including but not limited to osteonecrosis of the jaw and other bone injuries.

11. Merck concealed and continues to conceal, at the time of Anita Allbright's purchase and ingestion of these drugs, the severity of the side effects being osteonecrosis of the jaw and injury to the humorous and/or shoulder and the necessity for extreme implantation of hardware to maintain these injuries.

12. At all times material, and when Anita Allbright was purchasing and ingesting these drugs manufactured by Merck with the prescription of her physician(s), Merck concealed its knowledge of bisphosphonates' lack of long term benefits and unreasonably dangerous risks from Anita Allbright, her physician(s), other consumers, and the medical community.

13. Merck did not adequately inform Anita Allbright, as a consumer, at all times material, when she was, unbeknownst to her, about the well established risks of bisphosphonates use including osteonecrosis of the jaw and injury to other bones.

14. Merck failed to conduct adequate and sufficient post-marketing surveillance of Fosamax after marketing was commenced and nevertheless advertised, distributed, and sold the drug to Anita Allbright who would not have taken these drugs if she had been informed of the unreasonable risk of osteonecrosis.

15. Anita Allbright has suffered osteonecrosis of the jaw bones and humerus and other areas of the body as a result of her taking these drugs as prescribed.

16. Merck's drugs have caused, without adequate warning, various injuries, dental and medical intervention, medical and/or surgical bills mental anguish, pain and suffering. Anita Allbright's damages will continue into the indefinite future. The warnings

were inadequate because those using Merck's Fosamax or alendronate could suffer exceptionally deleterious dental surgery, impaired wound healing, inflamation of surrounding tissue, non-healing extraction sockets, and exposed necrotic jaw bone.

17. Anita Allbright is entitled to compensatory damages both economic and non-economic as permissible under Florida law.

18. In September 1995, the Federal Drug Administration approved Merck's compound alendronate for various uses, including the treatment of osteoporosis and Paget's disease.

19. Alendronate sodium is marketed by Merck under the name of Fosamax.

20. Fosamax falls within a class of drugs known as bisphosphonates. It is used to treat bone conditions such as osteoporosis. Other drugs within this class of drugs such as Aredia and Zometa are used as chemotherapy and as adjunct to chemotherapy, but are not indicated for use in non-cancerous conditions such as osteonecrosis.

21. There are two classes of bisphosphonates with these being containing nitrogenous and non-nitrogenous bisphosphonates.

22. The nitrogenous bisphosphonates include the following: pamidronate (Aredia), ibandronate (Boniva) and alendronate (Fosamax). The non-nitrogenous Bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron) and tiludronate (Skelid).

23. The Physician Desk Reference (PDR) for Fosamax and/or alendronate confirm that the respective molecule in each compound contains a nitrogen atom.

24. Merck knew or should have known of relationship between bisphosphonates and exceptional deteriorating maladies of the jaw and/or other bones including, but not limited to, the humerus. This causes exposed bone and necrosis to the unsuspecting Anita

Allbright.

25. Throughout the 1990's and 2000's, medical articles and studies reported frequent and common occurrence of osteonecrosis of the jaw in patients taking nitrogenous bisphosphonates. Merck did not adequately inform Anita Allbright of the side effects of Fosamax and/or alendronate. She was not warned of osteonecrotic jaw with implantation of hardware to stabilize the jaw, the risk of deterioration of the humorous and/or arm, and other bone injuries. When Merck knew that Fosamax, a nitrogenous bisphosphonate, shared an adverse profile similar to that of other drugs within the specific subclass of bisphosphonates, i.e. those containing nitrogen.

26. Merck knew or should have known that bisphosphonates including Fosamax, and/or alendronate suppressed bone turnover and compromised the ability of the jaw bone to heal. Merck did not warn of the overwhelming and debilitating seriousness of deteriorating jaw bone.

27. Anita Allbright took and ingested Fosamax and/or alendronate from 2008 when Merck did not give sufficient warnings. Merck did not adequately warn against using any invasive procedure (such as drilling a cavity) for any patient on bisphosphonates including Fosamax and/or alendronate. As a direct and proximate result, a minor injury, unbeknownst to Anita Allbright, can turn into a non-healing wound that can progress to more and more widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow.)

28. Once Anita Allbright recognized osteonecrosis, it was not reversible and is now difficult to treat or to reverse the condition.

29. Osteonecrosis of the jaw is a serious medical event and results in severe disability, future dental and medical expenses, and difficulty chewing and eating.

30. After Merck marketed these drugs, there were reports of osteonecrosis of the jaw and other bones with other dental complications among users which began surfacing indicating that Fosamax and/or alendronate shared the class effects of the other nitrogenous bisphosphonates.

31. Despite this knowledge, Merck failed to implement further studies of the risk of osteonecrosis of the jaw and other bones relative to its products Fosamax and/or alendronate .

32. Since Fosamax and/or alendronate were released, the FDA and Merck have received reports of osteonecrosis of the jaw and other bones among users of these drugs.

33. Merck failed to evaluate and verify the safety of Fosamax and/or alendronate with respect to osteonecrosis of the jaw.

34. Merck marketed the prescription of these drugs such as Fosamax and/or alendronate and sought to extend the exclusivity period of Fosamax through 2018.

35. Merck has failed to implement stronger warnings pursuant to 21 C.F.R. 314.70 commonly known as "the changes being effected regulation."  (CBE regulation.)

36. On August 25, 2004, the Federal Drug Administration posted its ODS post marking safety review on bisphosphonates specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (Fosamax).

37. This above was an epidemiologic review of the FDA adverse events database conducted by the FDA division of drug risk evaluation.

38. As a result of the FDA review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to the intravenous bisphosphonates used for chemotherapy.

39. The FDA review indicated that the osteonecrosis of the jaw was a class effect

which specifically extended to the oral bisphosphonates Fosamax and/or alendronate.

40. As a result, the FDA advised and stated that Merck should amend the labeling for the respective bisphosphonates medication to specifically warn of the risk of osteonecrosis of the jaw.

41. Merck has refused to accede to the FDA request timely and to this day still does not adequately and/or specifically warn of the exceptional medical complication risk of osteonecrosis of the jaw in the label for Fosamax and/or alendronate. When a class of people, including Anita Allbright, have an adverse reaction that is so devastating, the warning is inadequate.

42. Merck elected not to warn patients adequately. Despite Merck's knowledge of the increased risk of osteonecrosis of the jaw in patients using Fosamax and/or alendronate, Merck continued during to defend its drugs and minimize unfavorable findings.

43. Similar claims alleged that Merck has repeatedly been cited by the FDA for violating federal regulations for overstating the benefits of Fosamax and/or alendronate and minimizing the risks associated with the drug.

44. Fosamax was one of Merck's top selling drugs averaging more than three billion dollars a year in sales until the generic version became available in 2008.

45. All wholesale shipments of prescription drug products and all samples of such products are accompanied by package inserts, which contain insufficient and/or inaccurate information about the product, including its active and inactive ingredients, pharmacokinetics chemistry warnings and side effects. The verbatim content of the package insert for a named brand prescription drug product is typically published as a so-called monograph for the product in the PDR. An annual compilation of such monographs

supplemented periodically. A monograph for any prescription drug product may be published in the PDR at the instance of the manufacturer upon payment of a fee to the publisher.

46. Merck is aware that physicians routinely rely on the package insert and PDR monograph for Fosamax in instances when the physician is also aware that substitution with alendronate sodium is certain to occur by the patient's pharmacist.

47. A physician's reliance on the information concerning the properties and effects contained in the package insert or PDR monograph for Fosamax is foreseeable and reasonable.

48. In prescribing Fosamax and/or alendronate for Anita Allbright, her physician(s) reasonably relied upon the information inadequately published in the package inserts and/or the PDR and/or otherwise disseminated by Merck through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and/or regulatory submissions and were not aware of information different from or contrary to the inaccurate misleading materially incomplete false or otherwise inadequate information thus disseminated.

49. Anita Allbright's injuries occurred as a foreseeable and proximate result of Merck's dissemination to physicians including Anita Allbright's physician(s), inaccurate, misleading, materially incomplete, false, and otherwise inadequate information concerning the potential adverse effects of Fosamax and/or alendronate use. This includes significant oral and dental complications, including but not limited to, osteonecrosis of the jaw.

50. Anita Allbright, as a consumer, used Fosamax and/or alendronate for the treatment or prevention of osteoporosis when the risk was to her greater than the benefit and when there were several alternative products.

51. Based on information and belief, Merck withheld key information concerning the safety and efficacy of Fosamax and/or alendronate from the FDA.

52. Merck knew or should have known of the significant risk of dental and oral complications caused by the ingesting of Fosamax and/or alendronate, but Merck did not adequately and sufficiently warn consumers, prescribers, and/or the medical community of such risks.

53. Anita Allbright was prescribed and ingested Fosamax and/or alendronate as prescribed, and it was foreseeable to Merck, that there was a high degree of injury and therefore risk which had not been communicated and which would have discouraged the use of the drug.

54. Anita Allbright used Fosamax and/or alendronate which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold by Merck.

55. As a direct result of ingesting Fosamax and/or alendronate Anita Allbright, developed osteonecrosis of the jaw and other severe and permanent injuries as identified by pathological bone tests run by physicians at Nova Southeastern University. Anita Allbright acquires, and will, in the future, acquire ongoing medical and dental care and treatment.

56. Anita Allbright has suffered and will suffer physically from mental anguish as well as psychological pain and suffering from the knowledge that she will have life long complications as a result of her injuries sustained from the use of Fosamax and/or alendronate.

57. Anita Allbright used Fosamax and/or alendronate as prescribed in a foreseeable manner consistently for the treatment and/or prevention of osteoporosis or

osteopenia.

58.	As a direct and proximate result of Anita Allbright's long term bisphosphonate use since 2008, she suffered severely suppressed bone turnover and sustained multiple fractures.

59.	Anita Allbright suffered, as a direct and proximate result of long term bisphosphonates use, severe mental and physical pain and is continuing to suffer. Anita Allbright has sustained permanent injuries and emotional distress in the past, present and will in the future.

60.	Anita Allbright used Fosamax and/or alendronate provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold. Anita Allbright would not have used the subject drug, and her physician(s) would never have prescribed this drug for so many years, if Merck properly disclosed the risk associated with the long term use of bisphosphonates.

61.	Merck, through their affirmative misrepresentation and omissions, actively concealed, from Anita Allbright and her physician(s), the true and significant risks associated with long term bisphosphonate use.

62.	The running of any applicable statute of limitations has been tolled by reason of Merck's fraudulent concealment and Anita Allbright's delayed discovery of osteonecrosis of the jaw and its being related to Merck's drugs.

63.	As a result of Merck's action, Anita Allbright and her prescribing physician(s) were unaware of the osteonecrosis of the jaw until 2015. Prior thereto, they could not have reasonably known or have learned, through reasonable diligence, that Anita Allbright suffered from use of bisphosphonates and had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Merck's acts,

omissions, and misrepresentation.

## Sequential Medical History

64. Before taking bisphosphonates, Anita Allbright was asymptomatic and in reasonably good health.

65. In September of 2009, Anita Allbright was prescribed Fosamax and/or alendronate. Anita Allbright was not sufficiently warned of the specific side effects nor the magnitude of the now occurring problems with her teeth, jaw, arm, humorous, and shoulder.

66. Anita Allbright took Fosamax on-and-off until January of 2015, at which time she discovered that the bisphosphonates she had been taking caused bone issues.

67. In November of 2014, Anita Allbright had pain at the rear of her jaw and when her dentist evaluated her, he was unable to locate the source of the pain.

68. On December 17, 2014, Anita Allbright had developed a lump on the right side of her jaw which was accompanied with extreme swelling under her tongue for which she was prescribed an antibiotic.

69. On January 21, 2015, a piece of Anita Allbright's jaw bone was protruding during a routine dental cleaning.

70. On February 4, 2015, another piece of jaw bone became dislodged and was pathologically evaluated at Nova Southeastern University.

71. As a result of the pathological evaluation and/or testing, there was a diagnosis of necrotic bone osteonecrosis of the jaw from bisphosphonates.

72. In March of 2015, Anita Allbright's tooth and jaw pain returned and were treated with antibiotics.

73. As a further result of Anita Allbright taking the drugs which Merck marketed,

she suffered from painful, disfiguring shingles and was prescribed Valacyclovir.

74. Painful lumps of the jaw continued accompanied by extreme pain with a diagnosis of medication related osteonecrosis of the jaw.

75. In June 2015, the Anita Allbright's front teeth lost fixation which prevented her from eating with her front teeth.

76. Bonding of the front teeth, in June 2015, was unsuccessful. In September 2015, the bonding was gone and teeth were loose, descending into the gum.

77. An MRI on the right shoulder portrayed full tear and retraction of Anita Allbright's supraspinatus tendon, which required a reverse shoulder replacement.

78. By May 2017, Anita Allbright suffered re-fracture of the right shoulder.

## COUNT I - STRICT LIABILITY - DEFECTIVE DESIGN

79. Anita Allbright repeats, reiterates and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

80. Merck researched, designed, developed, manufactured, labeled, marketed, promoted, supplied, distributed and/or sold the drugs Fosamax and/or alendronate to consumers in a manner that was defective and unreasonably dangerous.

81. Merck expected Fosamax and/or alendronate to reach and it did reach consumers, including Anita Allbright, without substantial change in the condition in which it was manufactured and sold by Merck.

82. Anita Allbright used Fosamax and/or alendronate as prescribed and in a manner normally intended, recommended, promoted, and marketed by Merck.

83. Fosamax and/or alendronate failed to perform safely when used as instructed or in a reasonably foreseeable manner by ordinary consumers, including Anita Allbright.

84. Fosamax and/or alendronate was defective in its design or formulation. It

was found since then to have been unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with its design or formulation. Fosamax and/or alendronate were defective in design or formulation in that each lacks efficacy and/or each poses a greater likelihood of injury than other osteoporosis treatments on the market and is more dangerous than ordinary consumers or their physicians can reasonably foresee or anticipate.

85. Fosamax and/or alendronate were defective in design and were unreasonably dangerous as the labels failed to adequately warn physicians and patients of the dangers associated with long term use of bisphosphonates, including, but not limited to, the risk of osteonecrosis of the jaw, severely suppressed bone turnover, brittle bones, and a greater susceptibility to stress fractures or low energy fractures. Furthermore, the label failed to instruct physicians and patients about the limited length of time Fosamax and/or alendronate was effective.

86. Although Merck knew, or should have known, of the defective nature of Fosamax and/or alendronate, it continued to design, manufacture, label, market and sell these drugs so as to maximize sales and profits at the expense of the public health and safety. By so acting, Merck acted with knowing, conscious, and deliberate disregard of the foreseeable harm caused by Fosamax and/or alendronate.

87. Anita Allbright nor her prescribing physician(s) could have, through the exercise of reasonable care, discovered Fosamax and/or alendronate's defects or perceived the dangers posed by these drugs.

88. As a direct and proximate result of Merck's defective design, Anita Allbright developed severe and permanent injuries. These include osteonecrosis of the jaw, humorous injury, and severely suppressed bone turnover.

89. Anita Allbright expects to suffer additional jawbone necrosis, infections, and fractures resulting from severely suppressed bone turnover caused by long-term bisphosphonate use.

WHEREFORE, Anita Allbright demands judgment against Merck for any and all damages, including, but not limited to, severe physical pain and suffering; mental anguish; severe anxiety; loss of life's pleasures; loss of enjoyment of life; loss of future earning capacity, future earnings and income; as well as compensatory damages together with interest, cost of suit, and counsel fees.

## COUNT II - STRICT LIABILITY- FAILURE TO WARN

90. Anita Allbright repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

91. Merck researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the drugs Fosamax and/or alendronate. In the course of the same, Merck directly advertised or marketed the product(s) to consumers or persons responsible for consumers and therefore had a duty to warn of the risks associated with the use of Fosamax and/or alendronate. It is a central premise of the federal drug regulation that the manufacturer bear responsibility for the content of its label at all times. A manufacturer is charged with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market. When a risk of a particular drug use becomes apparent, the manufacturer has a duty to provide a warning that adequately describes that risk. *Wyeth v. Levine*, 555 U.S. 555 (2009).

92. Fosamax and/or alendronate were under the exclusive control of Merck and

were unaccompanied by appropriate instructions and warnings regarding the risk of osteonecrosis of the jaw, severely suppressed bone turnover, resulting stress fractures, or low energy long bone fractures and other severe and permanent injuries associated with its use.  The instructions and warnings given did not accurately reflect the risk, incidence, symptoms, scope or severity of such injuries to the consumer or physicians. Merck's promotional activities further diluted or minimized the warnings given with the product.

93.     Merck downplayed the serious and dangerous side effects of Fosamax and/or alendronate to encourage sales of the product; consequently, Merck placed its profits above its customers' safety.

94.     Fosamax was defective and unreasonably dangerous when it left the possession of Merck in that it contained instructions and warnings insufficient to alert Anita Allbright or her physician(s) to the dangerous risks and reactions associated with its long-term use, including, but not limited to severely osteonecrosis of the jaw, suppressed bone turnover, multiple stress fractures, and low energy future long bone fractures associated with long-term use.  Even though Merck knew, or should have known, of the risks and reactions associated with Fosamax and/or alendronate, it still failed to provide warnings that accurately reflected the signs, symptoms, incident, scope, or severity of the risks associated with the product.

95.     Anita Allbright used Fosamax and/or alendronate as instructed and in a reasonably foreseeable manner.

96.     Anita Allbright could not have discovered any defect in Fosamax and/or alendronate through the exercise of reasonable care.

97.     Merck, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field and, further, Merck had, or should have had, knowledge

of the dangerous risks and side effects of Fosamax and/or alendronate.

98. Anita Allbright did not have the same knowledge as Merck and no adequate warning was communicated to her or her physician(s).

99. Merck had a continuing duty to warn consumers, including Anita Allbright and her physician(s), and the medical community of the dangers associated with Fosamax, and by negligently and/or wantonly failing to adequately warn of the dangers associated with its use, Merck breached its duty.

100. Although Merck knew, or should have known, of the defective nature of Fosamax and/or alendronate, it continued to design, manufacture, label, distribute, market, promote and sell Fosamax and/or alendronate. It did so without providing adequate warnings and instructions concerning the use of Fosamax and/or alendronate so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Fosamax and/or alendronate.

101. As a direct and proximate result of Merck's failure to adequately warn physicians and patients, Anita Allbright developed severe and permanent injuries. These include osteonecrosis of the jaw, humorous injury, and severely suppressed bone turnover.

102. Anita Allbright expects to suffer additional jawbone necrosis, infections, and fractures resulting from severely suppressed bone turnover caused by long-term bisphosphonate use.

WHEREFORE, Anita Allbright demands judgment against Merck for any and all damages, including, but not limited to severe physical pain and suffering; mental anguish; severe anxiety; loss of life's pleasures; loss of enjoyment of life; and loss of future earning capacity, future earnings, and income. This is together with interest, cost of suit, and

counsel fees.

## **COUNT III - NEGLIGENCE**

103. Anita Allbright repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

104. Merck owed Anita Allbright, and other consumers, a duty to exercise reasonable care when researching, designing, developing, testing, manufacturing, labeling, marketing, advertising, distributing, and selling Fosamax and/or alendronate.

105. Merck failed to exercise due care under the circumstances and therefore breached this duty by:

a) Failing to properly and thoroughly test Fosamax and/or alendronate before releasing them to market;

b) Failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of Fosamax and/or alendronate;

c) Failing to conduct sufficient post-market testing and surveillance of Fosamax and/or alendronate;

d) Designing, manufacturing, labeling, marketing, advertising, distributing, and selling Fosamax and/or alendronate to consumers, including Anita Allbright, without an adequate warning of the significant and dangerous risks of Fosamax and/or alendronate and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e) Failing to exercise due care when advertising and promoting Fosamax and/or alendronate; and

f) Negligently continuing to manufacture, label, market, advertise,

distribute and sell Fosamax and/or alendronate without appropriate warnings and instructions after Merck knew, or should have known, of its adverse effects.

106. Merck knew or should have known that consumers, including the Anita Allbright, would foreseeably suffer injury as a result of the Merck's failure to exercise reasonable care.

107. As a direct and proximate cause of Merck's failure to adequately warn physicians and patients, Anita Allbright developed severe and permanent injuries. These include osteonecrosis of the jaw, humorous injury, and severely suppressed bone turnover.

WHEREFORE, Anita Allbright demands judgment against Merck for any and all damages, including, but not limited to severe physical pain and suffering; mental anguish; severe anxiety; loss of life's pleasures; loss of enjoyment of life; and loss of future earning capacity, future earnings, and income. Anita Allbright also seeks cost of suit, and counsel fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Anita Allbright prays for judgment against Merck, as follows:

a) For general damages in an amount to be proven at the time of trial;

b) For special damages in an amount to be proven at the time of trial;

c) For statutory damages as set forth above, in an amount to be proven at the time of trial;

d) For prejudgment and post-judgment interest on the above general and special damages;

e) For costs of this suit and attorneys' fees; and

g) For all other relief that this Court deems necessary, proper, and just.

**DEMAND FOR JURY TRIAL**

Demand is hereby made for a trial by jury.

Respectfully submitted:

> By: /s/ John R. Sutton
> SUTTON LAW GROUP, P.A.
> JOHN R. SUTTON, ESQ.
> Florida Bar #: 149411
> Attorneys for Plaintiff
> 7721 SW 62nd Avenue, First Floor
> South Miami, Florida 33143
> Telephone: (305) 667-4481
> Facsimile: (305) 666-0142
> E-mail: info@suttonlawgroup.com